

## Notice of Service of Process

**null / ALL**
**Transmittal Number: 23321279**
**Date Processed: 06/09/2021**

| | |
|---|---|
| **Primary Contact:** | Sherry Robinson<br>Nissan North America, Inc.<br>One Nissan Way<br>Franklin, TN 37067-6367 |
| **Electronic copy provided to:** | Angie Mathis<br>Maribeth Riggins-Loy<br>Catherine Reidy<br>Steve Roberts<br>Tonya Brooks<br>Susan Gritton<br>Sandy Hughes<br>Courtney Smith<br>Samaritan Potter |

| | |
|---|---|
| **Entity:** | Nissan North America, Inc.<br>Entity ID Number  0505342 |
| **Entity Served:** | Nissan North America, Inc |
| **Title of Action:** | Brandon Smith vs. Nissan Motor Co., Ltd. |
| **Matter Name/ID:** | Brandon Smith vs. Nissan Motor Co., Ltd. (11303714) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Product Liability |
| **Court/Agency:** | McKinley County District Court, NM |
| **Case/Reference No:** | D-1113-CV-2021-00234 |
| **Jurisdiction Served:** | New Mexico |
| **Date Served on CSC:** | 06/07/2021 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Justin R. Kaufman<br>505-986-0600 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**EXHIBIT A**

| SUMMONS | |
|---|---|
| **Eleventh Judicial District Court**<br>**McKinley County, New Mexico**<br>**207 W. Hill Ave., Suite 200**<br>**Gallup, New Mexico  87301**<br>**Court Telephone: (505) 863-6816** | **Case Number:**    D-1113-CV-2021-00234<br><br><br>**Assigned Judge:**   Aragon, Robert A. |
| **BRANDON SMITH,**<br><br>            **Plaintiff,**<br><br>**v.**<br><br>**NISSAN MOTOR CO., LTD., and**<br>**NISSAN NORTH AMERICA, INC.,**<br><br>            **Defendants.** | **Defendant:**<br><br>**NISSAN NORTH AMERICA, INC.**<br>**c/o CSC of Lea County, Inc., MC-**<br>**CSC1, Registered Agent**<br>**726 E. Michigan Dr., Suite 101**<br>**Hobbs, New Mexico  88240-3465** |

**TO THE ABOVE NAMED DEFENDANT(S)**:  Take notice that

1.        A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

2.        You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.        You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.        If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.        You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.        If you need an interpreter, you must ask for one in writing.

7.        You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at McKinley County, New Mexico, this  4th   day of    June      , 2021.

WELDON J. NEFF
CLERK OF DISTRICT COURT

                                        DURHAM, PITTARD & SPALDING, L.L.P.

1

By: _____
    Deputy

_____
Signature of Attorney for Plaintiff
Justin R. Kaufman
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501
jkaufman@dpslawgroup.com
Telephone No.:  (505) 986-0600
Facsimile:  (505) 986-0632

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

2

FILED
11th JUDICIAL DISTRICT COURT
McKinley County
6/4/2021 1:10 PM
WELDON J. NEFF
CLERK OF THE COURT
Jaycelyn Etsitty

**STATE OF NEW MEXICO**
**COUNTY OF MCKINLEY**
**ELEVENTH JUDICIAL DISTRICT COURT**

**BRANDON SMITH,**

**No.** D-1113-CV-2021-00234

<b>Plaintiff,</b>

**v.**

**NISSAN MOTOR CO., LTD., and**
**NISSAN NORTH AMERICA, INC.,**

<b>Defendants.</b>

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**
**PERSONAL INJURY AND PUNITIVE DAMAGES**

COMES NOW Plaintiff Brandon Smith, by and through his counsel of record, and states the following as his Original Complaint for Personal Injury and Punitive Damages against Defendants Nissan Motor Co., Ltd. and Nissan North America, Inc. (together referred to as "Defendants" or the "Nissan Defendants"):

**I.      PARTIES**

1.      Plaintiff Brandon Smith is an individual and citizen of the State of Washington.

2.      Defendant Nissan Motor Co., Ltd. ("Nissan Motor") is a Japanese corporation that has transacted business in the State of New Mexico at all times relevant hereto, and knowingly places its products into the stream of commerce to be purchased by and used by consumers in the New Mexico market, but has failed to designate an agent for service of process. Defendant Nissan Motor will be served via the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters.

3.      Defendant Nissan North America, Inc. ("Nissan NA") is a California corporation duly organized and existing pursuant to law, and is registered to transact business in the State of New

Mexico. Defendant Nissan NA may be served with citation by serving its registered agent for service: CSC of Lea County, Inc., MC-CSC1, 726 E. Michigan Dr., Suite 101, Hobbs, New Mexico 88240-3465.

## II.     JURISDICTION, VENUE, AND JOINDER

4.     Jurisdiction over the parties and the subject matter herein is proper with this Court pursuant to Article VI of the New Mexico Constitution and the New Mexico long-arm statute, NMSA 1978, Section 38-1-16. Defendant Nissan NA consented to jurisdiction in New Mexico's courts through its corporate registration and appointment of an agent for service of process, pursuant to New Mexico law. Additionally, this Court has specific personal jurisdiction over Defendants Nissan Motor and Nissan NA (the "Nissan Defendants") because they serve a market for their products in New Mexico by, among other things, marketing and distributing vehicles in New Mexico, providing service on vehicles and parts in New Mexico, providing warranties covering products in New Mexico, and deriving income from sales, service, and repair work performed by Defendants and their dealers in New Mexico. One of their vehicles then caused injury to Plaintiff, a New Mexico resident, in New Mexico.

5.     Venue is proper in McKinley County, New Mexico pursuant to NMSA 1978, Section 38-3-1(A) and (F) because Plaintiff's cause of action originated in McKinley County, New Mexico.

6.     Joinder of Plaintiff's claims against all Defendants in this action is proper under Rule 1-020 NMRA because Plaintiff's claims: (1) arise out of the same transaction, occurrence, or

series of transactions or occurrences; and (2) questions of law and fact common to all Defendants will arise in this action.

### III.    FACTUAL BACKGROUND

7.      All previous paragraphs are incorporated by reference.

8.      On or about December 8, 2019, Plaintiff Brandon Smith was the properly restrained driver in a 2005 Nissan Sentra bearing VIN No. 3N1CB51D15L588252 ("the subject vehicle"), which was struck when Robert Brooksher made an illegal turn on eastbound I-40 near milepost marker 42.7 in McKinley County, New Mexico.

9.      During the impact, the passive safety systems of the subject vehicle, including the vehicle structure, failed to provide adequate occupant protection for Plaintiff because the occupant compartment zone was destroyed when the door hinge moved rearward 12 inches, causing the instrument panel to move rearward.

10.     The subject vehicle was designed by the Nissan Defendants.

11.     The subject vehicle was manufactured by the Nissan Defendants.

12.     The subject vehicle was also assembled and tested by the Nissan Defendants.

13.     Despite being properly seated and properly wearing the available seatbelt, Plaintiff sustained serious injuries when the subject vehicle failed to protect him because it violated several crashworthiness principles.

### Crashworthiness Overview

14.     Crashworthiness is the science of preventing or minimizing injuries or death **following** an accident through the use of a vehicle's various safety systems.[1]

---

1       In any crashworthiness case, the distinction between the cause of an accident versus the cause of injuries is an important one. One of the best analogies is the case of the Titanic. While the cause of hitting the iceberg has been the subject of much debate (inattentiveness, the captain may have been drinking, they were going too fast, etc.), there is no question that every passenger who entered a lifeboat that night lived, while 99% of those who went in the water

3

15.     There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

    1)     maintain survival space;

    2)     provide proper restraint throughout the entire accident;

    3)     prevent ejection;

    4)     distribute and channel energy; and

    5)     prevent post-crash fires.

16.     When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included a crashworthiness definition similar to that used above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

17.     The National Transportation Safety Board (NTSB) has also stated that "vehicle crashworthiness refers to the capacity of a vehicle to protect its occupants from crash forces. This protection—which is achieved, in part, by vehicle structure—includes maintaining a survival space around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

18.     Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails. For example, in a rollover, if the roof collapses

---

died. Accordingly, had the Titanic had enough lifeboats on board (i.e., the boat's "safety systems"), 100% of the people on board would probably have lived. So, the cause of the sinking (the accident) is irrelevant vis-à-vis how everyone died. What is important is how the safety systems worked (or did not work) following the accident.

such that no survival space is left, it does not matter what kind of restraint system, glass, fuel system, or energy absorbing system is used, because these systems have been rendered moot.

19.    Automotive manufacturers have known for decades that there is a distinction between the cause of an accident versus the cause of an injury. For instance, General Motors has admitted this under oath. General Motors has even stated that it is irrelevant who caused an accident, and that safety systems have to perform properly no matter who causes an accident.

**Duty to Make a Safe Vehicle**

20.    For decades, automobile manufacturers have been telling the general public and others how important it is to make safe vehicles.

21.    For instance, in 1993, General Motors stated: "Safety isn't one thing. It's everything." Mary Barra, CEO of General Motors, testified to Congress in 2014 that "[o]ur customers and their safety are at the center of everything we do." Jeff Boyer, Vice-President of Global Vehicle Safety at General Motors, has stated that "[n]othing is more important than the safety of our customers in the vehicles they drive."

22.    General Motors has also stated in the past that "[t]he rich don't deserve to be safer . . . . Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

23.    Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "[e]very American has the right to a safe vehicle." Gerald Greenwald, chairman of Chrysler, then sent a letter to every Chrysler dealership in 1988 stating that Chrysler intended to honor that right.

24.     In 2012, Volvo stated that "[t]echnologies for meeting the goal of zero injuries and fatalities are basically known today – it is a matter of how to apply, finance, distribute and activate."

25.     BMW has stated that BMW vehicles are designed to minimize the effects of accidents. BMW has also stated that the cornerstone of BMW's design philosophy is "safety—during and after an accident."

26.     Honda believes that safety is for everyone, including for other vehicle occupants and for pedestrians.



27.     In 1991, Toyota said that "Toyota engineers are faced with making all vehicles as safe as humanly possible."

6

28.     As far back as the 1930s, Ford has been touting to the public how much it cares about safety. Indeed, in 1934, Ford stated that "[s]afety is the most desirable of all the qualifications that the car of today must have."

29.     Since that time, for decades, Ford has been representing to the public how its cars are safe and how consumers should trust Ford when it comes to safety. For instance, the following are some examples of Ford statements that it has made in the past:



# ASK ANYONE
## WHO'S DRIVEN A FORD
## LATELY... ABOUT SAFETY:

### "SINCE YOU CAN'T TRUST EVERY OTHER DRIVER, YOU'D BETTER BE ABLE TO TRUST YOUR CAR."



## What One Car Company Can Do.

If its resources are great enough and its commitment is strong enough, one car company can become synonymous with safety.

The Ford Motor Company believes that goal is both worthy and attainable. We accept the challenge to build safer cars, and we welcome the responsibility of that leadership.

Since safer cars are quality cars, one important contribution to safety will be our continued commitment to quality. Already, Ford cars outlast Japanese cars. And in the last two years the quality of our cars, as judged by their owners, has increased by 46%.

Ford research will be equally important. Safety designs begun a decade ago are paying off now in our new smaller cars.

Ford Escort is not only the best-selling car in the world, it's the only car (along with Mercury Lynx) to be awarded reduced insurance rates by Allstate.

Testing will be critical, too. It's not uncommon for us to put $300,000 into a prototype car and then promptly destroy it in the search for a safer design. In fact, we crash-test a car a day, every working day.

The truth is, we're attacking the issue of safety on every front, and we intend to bring you specific, detailed examples in subsequent messages.

In a business as competitive as ours, we believe safer Fords and Lincolns and Mercurys will someday mean safer Datsuns and Buicks and Volkswagens. So what one car company can do, Ford Motor Company will do.

8

# YOUR SAFETY IS OUR TOP PRIORITY.

30.     Ford has also admitted that it has a moral obligation to reduce the risk of injury to consumers:



31.     Mazda has stated that when it comes to safety, you can never go too far.

32.     Mazda has stated that "since drivers are human beings are fallible, Mazda offers a range of technologies which help to prevent or reduce the damage resulting from an accident."

33.     Below is an advertisement from Mazda wherein Mazda makes the comment that they have made every side of their vehicles safe:



34.     In 2002, Mitsubishi stated, "Your safety, and the safety of your passengers, has always been a primary concern of Mitsubishi engineers."

35.     Another example is the following statement regarding safety from Mitsubishi:

**A clear direction for the development and manufacturing of Mitsubishi Motors vehicles**

The cars that Mitsubishi Motors will manufacture will embody two major concepts: driving pleasure and safety. Mitsubishi Motors will manufacture cars that deliver superior driving performance and superior levels of safety and durability, and as such, those who use them will enjoy peace of mind.

10

36.     Regarding safety in Mitsubishi vehicles, Mitsubishi has also said: "We believe you can't be over-prepared for the unexpected."

37.     Kia, which is owned by Hyundai, has stated that in designing and testing its vehicles, there's nothing Kia considers more important than safety.

38.     Kia has stated that it strives to achieve crashworthiness results that far exceed those required by law.

39.     Kia has said that no one can predict a collision occurring, but you can trust a Kia vehicle to protect you should the unforeseen happen.

40.     Kia has further stated that Kia works tirelessly to ensure that every safety system on its vehicles is designed to help people handle the unexpected.

41.     Because every American has the right to a safe vehicle, because safety is for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon auto manufacturers to investigate and find out what other automakers are doing with regards to safety and to apply those same methods or technology to their own vehicle.

42.     Furthermore, an automaker cannot choose to use safer technology in Europe, Australia, Japan, Korea, or some other country and refuse or fail to offer that same safety technology to consumers in America.

43.     It is further incumbent upon auto manufacturers to protect consumers by using knowledge that a manufacturer has acquired over decades and decades of vehicle design, testing, and reverse engineering of other manufacturers' vehicles.

44.     In fact, insofar as society permits vehicle manufacturers to operate in such a way that they are permitted to sell highly complex, potentially dangerous, and also potentially highly

11

profitable products on the market, manufacturers have a duty to do their very best to ensure that
the vehicle will not be harmful to buyers, their households, or third parties.

45.     This is cemented by the fact that every state of the United States has case law which
holds that every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury
to others.

### Nissan and Safety

46.     For decades, the Nissan Defendants have been representing to the public how their
cars are supposedly safe, and how they supposedly care about safety. For instance, the Nissan
Defendants have stated that they "take the task of keeping you and your passengers safe just as
seriously as you do."

47.     The Nissan Defendants have also said that, "[a]t Nissan, we believe that of all the
things an automobile is designed to do, it must make the protection of its occupants an unwavering
priority."

48.     Furthermore, the Nissan Defendants have said that "it's clear that Nissan places an
enormous value on safety."

49.     The Nissan Defendants have also stated that the Nissan Defendants' "commitment
to safety can be seen throughout every automobile we build. So, should an accident occur, you can
rest assured that you're surrounded by state-of-the-art safety engineering and numerous features
that have all been proven to help minimize the effects of it."

50.     The Nissan Defendants have even gone so far as to basically state that its cars are
the most advanced on the road in terms of safety—"every vehicle we build is at the forefront of
automotive technology."

51.     In 2008, the Nissan Defendants said: "SHOULDN'T YOUR SAFETY BE AN AUTOMAKER'S TOP PRIORITY? We think so." They also said that "you can never be too safe."

52.     The above examples (and numerous others, as will be detailed at trial) make clear that the Nissan Defendants have repeatedly stressed how they care about safety, and how they must protect occupants in the event an accident does occur.

## IV.     CLAIMS FOR RELIEF

### COUNT 1:
### Strict Liability: Defective Design/Manufacture/Failure to Warn

53.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

54.     The Nissan Defendants are in the business of designing, manufacturing, testing, assembling, marketing, and/or distributing vehicles, including the subject vehicle.

55.     The Nissan Defendants designed, manufactured, tested, assembled, marketed, distributed, and/or sold the vehicle that was involved in the accident that left Plaintiff with serious, catastrophic injuries.

56.     The subject vehicle was defective and unreasonably dangerous for its intended use.

57.     The subject vehicle was defective at the time it left the Nissan Defendants' control.

58.     Reasonable consumers would not have been aware of the defective condition of the subject vehicle.

59.     Plaintiff was not aware of the defects in the subject vehicle.

60.     It was entirely foreseeable to and well-known by the Nissan Defendants that accidents and incidents involving their vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

61.     The serious injuries to Plaintiff complained of herein occurred because the subject vehicle was not reasonably crashworthy, and it was not reasonably fit for unintended, but clearly foreseeable, accidents.

62.     The subject vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

63.     The Nissan Defendants, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, tested, assembled, marketed, and/or distributed said vehicle in question.

64.     As detailed herein, the subject vehicle contains and/or the Nissan Defendants have created either design, manufacturing, testing, assembly, marketing, and/or distribution defects.

65.     The Nissan Defendants either knew or should have known of at least one safer alternative design which would have prevented the serious injuries to the Plaintiff.

66.     Below are specific examples of how the vehicle was defective and/or unreasonably dangerous, how the Nissan Defendants were negligent, how the Defendants misrepresented the safety of vehicles in general, and/or how the Nissan Defendants, specifically through their false, misleading, and/or deceptive marketing and ads, foisted an unsafe vehicle upon the public.

67.     In addition to the foregoing, the Nissan Defendants, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, tested, assembled, marketed, and/or distributed said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, tested, assembled, marketed, and/or distributed because the Nissan Defendants knew and/or should have known of the following, non-exhaustive list of defects:

14

a. The subject vehicle violated principles of crashworthiness;

b. The subject vehicle failed to distribute and channel crash forces properly in a frontal override, offset type impact event;

c. The subject vehicle failed to utilize a front structure that contained UHSS, boron, ferrite, martensite, AHSS, complex phase or dual phase steel to ensure the safety cage was preserved;

d. The subject vehicle failed to utilize 1100 MPa or greater steel in the front structure, cabin, rocker panel, door seat, roof structure and side structure;

e. The subject vehicle's front structure crushed in an abnormal fashion which allowed excessive cabin intrusion;

f. The subject vehicle allowed excessive rearward excursion of 12 inches for the hinge pillar and instrument panel;

g. The subject vehicle failed to contain countermeasures to address frontal override and/or offset type accident events;

h. The driver's survival space was destroyed;

i. The driver's safety cell/cage/cabin area was destroyed;

j. The subject vehicle failed to contain an upper load path to address override impacts;

k. The subject vehicle failed to contain any type of design to deal with narrow frontal offset impacts;

l. The subject vehicle failed to contain designs that it worked on during the ESV programs to address narrow frontal offsets;

m. The Nissan Defendants failed to reverse engineer other vehicles to study frontal offset countermeasures;

n. The Nissan Defendants bragged about the safety of its vehicles;

o. The Nissan Defendants bragged about the state of the art and technological advancements of its vehicles;

p. The Nissan Defendants bragged about being an industry leader in vehicle safety;

q. The Nissan Defendants made material misrepresentations that were not accurate or were false, and Plaintiff relied upon these representations;

r. The Nissan Defendants have said that building safe vehicles is the most important thing we do;

s. The Nissan Defendants have said that automobile safety is the foundation of Nissan automobile manufacturing;

t. The Nissan Defendants have said that we have built a storehouse of safety technology since our first vehicle was built;

u. The Nissan Defendants have said that safety is one of our foremost concerns;

v. The Nissan Defendants have said that passive safety engineering means to ensure occupant survival with the least injuries in as many accident situations as possible;

w. The Nissan Defendants have said that safety is always on our mind;

x. The Nissan Defendants have said that it is fully aware of its responsibility to produce vehicles with the best overall safety possible;

y. The Nissan Defendants have said that they work hard to stay at the cutting edge of technology;

z. The Nissan Defendants have said that they believe that safety is fundamental for making vehicles;

aa. The Nissan Defendants have said that we always work to improve by putting forth new ideas and making the best of our abilities;

bb. The Nissan Defendants have said that they believe that everyone deserves to be safe;

cc. The Nissan Defendants have touted that no matter who you are and what you drive, everyone deserves to be safe;

dd. The Nissan Defendants have stated that safety is of paramount importance;

ee. The Nissan Defendants have stated that everything we do is to ensure occupant safety;

16

ff. The Nissan Defendants have stated that everyone deserves a safe vehicle;

gg. The Nissan Defendants violated consumer expectations;

hh. The Nissan Defendants violated principles of consumer expectation by giving consumers a false sense of security, and a false sense of safety;

ii. The defects, negligence, misrepresentations, and violations of consumer expectations were the direct, substantial, producing, and proximate cause of the catastrophic injuries to Plaintiff.

68.     At the time of the accident, Plaintiff was using the subject vehicle for a purpose and in a manner which could be reasonably foreseen.

69.     The Nissan Defendants could not reasonably expect that the risks of injury set forth herein were obvious or known to foreseeable users of the subject vehicle, including Plaintiff.

70.     One or more safer alternative designs existed that were technologically and economically feasible, yet the Nissan Defendants failed to utilize these designs.

71.     Plaintiff's injuries and damages were caused by a condition or conditions of the subject vehicle which were not substantially changed or unforeseeably altered after the Nissan Defendants placed the subject vehicle on the market.

72.     Plaintiff's injuries and damages were caused by the defects in the subject vehicles as outlined above.

## COUNT 2:
### Negligence

73.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

74.     In addition to and/or in the alternative to the product liability claims asserted herein, Defendants were negligent in the design, manufacture, testing, assembly, marketing, and/or distribution of the subject vehicle.

75.    Companies that are in the business of designing, testing, manufacturing, marketing, distributing, and selling products are never allowed to needlessly endanger consumers.

76.    Nothing should be more important to companies that design, manufacture, test and sell products than consumer safety.

77.    Because nothing should be more important than consumer safety, companies that design, manufacture, and sell products should always analyze the product for potential hazards or defects—at every stage of production.

78.    In fact, for automobile manufacturers, in designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

79.    Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

80.    If the potential risks, hazards, and/or dangers cannot be eliminated, then they should be guarded against.

81.    If the potential risks, hazards, and/or dangers cannot be eliminated or guarded against, they should at least be warned about.

82.    A company that does not conduct a proper engineering analysis that would help it to identify potential risk, hazards, and/or dangers that could seriously injure someone is negligent.

83.    Defendants owed a duty to use reasonable care in the design, manufacture, testing, assembly, marketing, and/or distribution of the subject vehicle.

84.    Defendants failed to use reasonable care when they designed, manufactured, tested, assembled, marketed, distributed, and/or sold the subject vehicle, and consequently put a product

on the market that was unreasonably dangerous for its intended or reasonably anticipated use as discussed herein.

85.     As noted earlier, most (if not all) engineering associations in the United States (and around the world) have a code of ethics.

86.     The number one fundamental canon of ethics for almost all engineers is to "hold paramount the safety, health, and welfare of the public."

87.     Accordingly, since paramount means "superior to all others," all vehicle engineers have to hold the safety, health, and welfare of the public as their highest considerations when they design vehicles. Indeed, General Motors, for instance, has admitted under oath that its engineers have to hold paramount the safety, health, and welfare of the public, and that manufacturers have to make efforts to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

88.     Ford has also testified under oath that it agrees that a vehicle engineer's primary responsibility is to identify potential risks, hazards, and dangers that can cause serious injury or death.

89.     Ford has further testified under oath that Ford "has a moral obligation to do those things that are feasible and practical to reduce the risk of injury and death to customers."

90.     Accordingly, the Nissan Defendants had a duty to conduct a proper engineering analysis and to conduct proper development, engineering, design, testing and engineering analysis that would help them to identify potential risks, hazards, and/or dangers that could seriously injure or fatally harm someone. The Nissan Defendants breached that duty.

91.     With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not subjected to rigorous design, development, engineering analysis and testing.

92.     With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not properly tested for the type of frontal impact that occurred in this case to determine what countermeasures were necessary to distribute and channel energy properly, to maintain survival space, and to contain countermeasures to address frontal offset/override type impacts.

93.     With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not properly tested or analyzed to see what type of different structure designs and/or material were needed to provide optimal occupant protection.

94.     With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not properly tested for the type of frontal impact that occurred in this case to determine how the vehicle needed to be designed to provide proper occupant protection.

95.     The Nissan Defendants' occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

96.     When the Nissan Defendants designed the subject vehicle, they did not reinvent the wheel. The Nissan Defendants used (or should have used) an enormous amount of human capital which had been acquired from numerous different engineers who had worked on many prior vehicles. This knowledge would have been (or should have been) utilized in different aspects of the designs of the vehicle to make the vehicle safer in foreseeable accidents such as what occurred in this case.

97.     The Nissan Defendants are currently in exclusive possession and control of all technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. The Nissan Defendants are also in possession of what, if any, engineering analysis was performed.

98.     However, it is expected that after all of those materials are produced in discovery and/or after the Nissan Defendants' employees and corporate representatives have been deposed, additional allegations may come to light.

99.     Lastly, the materials from other models, years, and countries will provide evidence regarding what the Nissan Defendants knew, when they knew it, and about what was utilized or not utilized as well as the reasons why.

100.     The foregoing acts and/or omissions, defects, and/or negligence of the Nissan Defendants were the producing, direct, substantial, and/or proximate cause of the serious injuries to Plaintiff and Plaintiff's damages.

101.     The negligent acts and omissions of the Nissan Defendants as stated above, either singularly or in combination, were a cause of Plaintiff's injuries and damages.

## COUNT 3:
## Damages

102.     All previous paragraphs are incorporated by reference.

103.     As a direct and proximate result of the defective condition of the subject vehicle, and the negligence of the Nissan Defendants detailed above, Plaintiff sustained significant injuries and damages.

104.     As such, Plaintiff seeks damages, including but not limited to the following:

    a)     The reasonable expenses of necessary medical care and treatment, as well as nonmedical expenses, which have been required as a result of the injury,

and the present cash value of medical and nonmedical expenses reasonably certain to be required in the future;

b)   Pain and suffering experienced and reasonably certain to be experienced in the future by Plaintiff;

c)   Loss of earnings, loss of earning capacity, loss of household services, and the present cash value of earnings and household services reasonably certain to be lost in the future;

d)   The nature, extent and duration of the injury, including disfigurement;

e)   Loss of enjoyment of life experienced and reasonably certain to be experienced in the future; and

f)   All other damages to which Plaintiff is entitled under New Mexico law.

## COUNT 4:
## Punitive Damages

105.   All previous paragraphs are incorporated by reference.

106.   In addition to placing the unreasonably dangerous and defective subject vehicle into the market, giving rise to strict liability and negligence liability, the Nissan Defendants also acted intentionally, maliciously, willfully, recklessly, and/or with wanton disregard for the safety of others.

107.   Among others, these intentional, malicious, willful, reckless, and/or wanton acts and omissions of the Nissan Defendants, either singularly, in combination, or based on the cumulative conduct of employees of the Nissan Defendants, were a cause of Plaintiff's injuries and damages. Accordingly, the Nissan Defendants are liable for punitive damages.

## V.   CONCLUSION

WHEREFORE, Plaintiff requests judgment against Defendants for their damages, punitive damages, pre-judgment, and post-judgment interest at the legal rate, costs, and such other and further relief to which Plaintiffs may be entitled under the facts and circumstances.

Respectfully submitted,

**DURHAM, PITTARD & SPALDING, LLP**

*/s/ Justin R. Kaufman*
Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
**THE TRACY FIRM**
4701 Bengal Street
Dallas, Texas 75235
Telephone: (214) 324-9000
Facsimile: (972) 387-2205
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiff*

23

FILED
11th JUDICIAL DISTRICT COURT
McKinley County
6/4/2021 1:10 PM
WELDON J. NEFF
CLERK OF THE COURT
Jaycelyn Etsitty

**STATE OF NEW MEXICO**
**COUNTY OF MCKINLEY**
**ELEVENTH JUDICIAL DISTRICT COURT**

**BRANDON SMITH,**

       **Plaintiff,**

**v.**

**NISSAN MOTOR CO., LTD., and**
**NISSAN NORTH AMERICA, INC.,**

       **Defendants.**

**No.**  D-1113-CV-2021-00234

## JURY DEMAND

COMES NOW Plaintiff, BRANDON SMITH, by and through his attorneys of record, and hereby demands a trial by a twelve (12) person jury in this cause of action, and tenders the appropriate fee with the filing of this application.

Respectfully submitted,

**DURHAM, PITTARD & SPALDING, L.L.P.**

*/s/ Justin R. Kaufman*
Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
**THE TRACY FIRM**
4701 Bengal Street
Dallas, Texas  75235
Telephone: (214) 324-9000
Facsimile: (972) 387-2205
ttracy@vehiclesafetyfirm.com